# REPORTS

OF

## CASES ARGUED AND DETERMINED

### At June Term, 1853.

---

### HOLMES vs. THE STATE.

1. A charge which has the effect of withdrawing from the consideration of the jury any evidence which tends to establish the plaintiff's case or the defence, is erroneous.

2. However correctly the judge may lay down the law in his general charge to the jury, yet, if, in a subsequent specific charge, he places the case upon the existence of certain facts on which alone it may not be properly made to turn, the effect of which, if literally followed by the jury, is to withdraw from them the consideration of other facts which tend either to disprove or materially qualify those on which the charge is predicated, injury will be presumed from the error.

3. If one has reasonable apprehension of great personal violence, involving imminent peril to life or limb, he has the right to protect himself even at the expense of his assailant's life, if such protection cannot be otherwise secured.

ERROR to the Circuit Court of Montgomery.
Tried before the Hon. JOHN GILL SHORTER.

THE plaintiff in error, William J. Holmes, was indicted for an assault and battery on one Anderson, and was convicted. A bill of exceptions was sealed on the trial by the presiding judge, the material parts of which are as follows:

"The State introduced one Murrah as a witness, who testified, that, on a day in April, 1852, his wife informed him, on his return home early in the morning of that day, that the de

fendant had, during the absence of witness, used very abusive language towards her; that the witness shortly afterwards, and on the same day, took his gun, and walked around his field to a road within less than half a mile of defendant's house; that on his getting to said road, he met with said Anderson and his wife; that he, then and there, told Anderson that defendant had been abusing the wife of witness, and that his (witness') gun was loaded with buck-shot, and that he intended to kill the defendant before sun-down of that day; that, in a few minutes after this, and while witness and Anderson and his wife were still talking together in said road, they discovered the defendant, coming towards them along said road, with his gun; that as soon as they thus discovered defendant, Anderson's wife said to her husband, ' Come, let us go along home, for as soon as Holmes gets here, there will be a fuss;' Anderson answered his wife by telling her to go along home, but that he was not going to run away because there was going to be a fuss; that the defendant was some distance off when these remarks passed between Anderson and his wife; that he continued to walk towards them along said road, in an ordinary walk, and Anderson's wife started for home, and got some distance before defendant came to the place on said road where said witness and Anderson were; that when the defendant got to where they were, witness was sitting on the top of the fence, and his gun, loaded with buck-shot, was standing near him in the lock of the fence; that Anderson was sitting on a stump on the road-side, near to the witness, and had a large knife open in his hand, whitting a stick with it; that when the defendant got to where they were thus situated, he said to them, ' Good morning, gentlemen,' in a courteous and civil manner, and continued to walk on in said road in his ordinary gait until he had passed by them, and that just as defendant thus passsed by where the witness was sitting on the fence, witness said to him, ' What have you been abusing my wife for this morning?' that thereupon angry words passed between witness and defendant, which were not recollected distinctly by the witness; whereupon the defendant said to witness, ' You have not Anderson and your damned clan around you now, and I can whip you in a fair fight : I will give you a fair fight now;' and on making this remark, defendant immediately set down his gun by a tree on the road-side, and also threw down his knife by the

same tree, and took his position in the road, some ten feet from said tree, towards the witness, but some ten feet from Anderson and witness; as soon as defendant made the remark, Anderson said to defendant, ' You have been cursing me behind my back ; you shall not curse me to my face. I will cut your damned head off,' and immediately rose from said stump where he had been sitting, with his said large knife open in his right hand, and advanced towards defendant. Defendant here said, ' If you intend to use your knife, I will get my gun and shoot you.' Anderson replied, ' If you are afraid of my knife, I will shut it up,' and did shut it up by pushing the blade against his right side, and threw it down on the ground. The defendant then sprang to his gun, and seized it, and fired ; but Anderson was near enough, when defendant seized his gun and raised it, to catch hold of the barrel, and did catch hold of it, and prevent it from doing him any other harm than slightly burning his clothes with the powder. Defendant's gun was a double barreled gun ; the said road was a neighborhood road, and the road used and traveled by defendant in going to and returning from his house.

The witness further testified, that, some three months before said difficulty, defendant and one Bowen, who was very stout and weighed one hundred and eighty pounds, were quarreling ; that said Anderson came up, and took sides with said Bowen in the quarrel ; that said Bowen dared defendant to lay down his sword, but defendant refused, and said that, if defendant would go to some place where they were by themselves, he would fight him a fair fight; whereupon Anderson said, ' Damn his (defendant's) weapons ; he can't whip anybody where I am, even with weapons ;' that this quarrel occurred on the road, when defendant was going to a militia muster in the neighborhood, and had on his sword as part of his uniform ; that said Bowen, witness and Anderson were severally larger and abler men than defendant ; that defendant, witness and Anderson resided in the same neighborhood, not far apart, and all the foregoing matters occurred in Montgomery County.

The State introduced two other witnesses, viz : said Anderson and a Miss Jackson, whose testimony was substantially the same with the foregoing testimony of Murrah. The witness Anderson stated, that, when he saw defendant spring to his gun, he sprang to seize the barrel to prevent his shooting him. An-

derson and Murrah both testified that they were excited, and unfriendly to defendant; and Miss Jackson testified, that before the difficulty she lived with defendant, but since she had lived several months with Murrah, and came here with Anderson; but that she did not live with either Anderson or Murrah at this time.

The defendant introduced Mrs. Rouse as a witness, who testified, that she lived near the place where the said difficulty occurred, for which defendant is indicted; that she happened to be passing the road just before Anderson rose from said stump, and commenced advancing on the defendant with his said knife open in his right hand; that she was within a few feet of Anderson, and near enough to see and hear all that was said or done by Anderson after he arose from the stump; that she did not see him shut his knife, nor did she hear him say to defendant, 'If you are afraid of my cutting you with the knife, I will shut it up,' or anything like that; that she did hear Anderson, as he rose from said stump, say to defendant, 'You shall not curse me to my face. I will cut your damned head off,' and that whilst he was saying this he was advancing on defendant; that she did not know that Anderson had dropped or shut his knife until after defendant had fired his gun, when she saw the knife lying on the ground, shut, near to where the gun fired; that as Anderson was advancing on defendant, and when very near to him, defendant said, 'If you intend to cut me, I will shoot you,' or something like that, and instantly sprang to his gun, and seized and fired it; that said Anderson catching the barrel just before it fired; that she is a cousin of defendant.

The foregoing is substantially all the evidence adduced on the trial of this cause; and upon this evidence the court gave to the jury the following several charges, to-wit:

1. That, if the defendant fired his gun at Anderson in Montgomery County, in April, 1852, and if there was no necessity for such firing, to save his own life, or to prevent great bodily harm from being done to him, nor any reasonable belief of such necessity, then defendant was guilty, as charged in the indictment; but, if the defendant fired his gun under such necessity, or under a reasonable belief of such necessity, then he was not guilty. To this charge no exception was taken.

2. That, if, when Anderson was advancing towards defendant

with his knife open in his hand, defendant said to him, 'If you intend to use your knife, I will get my gun and shoot you,' and Anderson replied, ' If you are afraid of my knife, I will shut it up,' and did shut up his knife, and throw it down on the ground, and defendant then sprang to his gun, and seized it and fired, then defendant is guilty;" to which charge the defendant, by his counsel, excepted.

BELSER & RICE, for plaintiff in error :

1. Although there may be no actual danger of such bodily harm as might endanger life, yet, " a reasonable apprehension of great violence to his person, is a sufficient excuse " for the defendant.—Young v. The State, 11 Humph. R. 200 ; Oliver v. The State, 17 Ala. R. Such is the law, even when the defendant is not altogether free from blame, but the necessity, or the reasonable belief of necessity, may be said to be partly induced by his own act. See "excusable homicide " defined in Roscoe's Crim. Ev. 580.

2. Whether such reasonable apprehension existed, is a question of fact, which the jury alone can decide ; and it is error to withdraw it from their determination : See cases above cited. The last charge deprived defendant of all benefit of trial by jury as to the most material matters in evidence.

3. Under the facts and circumstances proved in this case, it is not a conclusion of law, as assumed in the last charge, that the defendant was guilty under the state of facts therein supposed. The defendant, like the witness Rouse, may not have heard what Anderson said about shutting his knife, and may not have known that it was shut or thrown down until after he fired. But, even if defendant did hear what Anderson said, and saw him shut and throw down his knife, still it was a question of fact for the jury to decide, whether or not, under all the circumstances, there was a reasonable appprehension on his part of great violence to his person, even after Anderson had shut and thrown down his knife. The evidence set out in the bill of exceptions discloses a state of facts under which the defendant had reasonable grounds for apprehending great violence to his person ; and if he had reasonable grounds for such belief, it is a good legal excuse for shooting, although, in fact, the belief was

erroneous.   Such belief is, in law, equivalent to an actual necessity.

4. The last charge deprived the defendant of all the benefit of the first charge.   It must have misled the jury in the undue and decisive importance it attached to the shutting of the knife with the accompanying remark of Anderson.—Young v. The State, 11 Humph. R. 200.

5. The last charge is liable to this further objection : it assumes that the defendant had no reasonable apprehension of great violence to his person, *provided* Anderson shut and threw down his knife, and made a certain remark ; whereas those facts do not warrant any such assumption.   The charge also violates the rule, that, where a charge misleads the jury, by inducing them to believe there is but one point of defence, when there are two, there must be a reversal of the judgement.—Relf. v. Rapp, 3 Watts & Serg. 21 ; Edgar v. McArn, at June term, 1853.

P. T. SAYRE, for the Attorney General, *contra:*

1. Under the testimony in the case, the last charge is correct. The court had a right to charge the jury hypothetically, and upon an assumed state of facts to charge the law by which they would be governed.—Brandon v. Snow *et al.* 2 Stew. 258 ; State v. Brinyea, 5 Ala. 244 ; Winston v. Metcalf, 6 ib. 756; Ivey v. Phifer, 11 ib. 540; State v. Cameron, 15 ib. 383.

2. This is all that was done in this case.   No single fact is assumed as proved, and no fact is withdrawn from the consideration of the jury.   If the facts supposed were proved, there can be no doubt as to the correctness of the charge.   The charge given must be construed in reference to the evidence to which it is applied.—Berry v. Hardeman, 12 Ala. R. 604 ; Lockwood v. Nelson, 16 ib. 294.   The evidence in the case, if it proves any thing, proves precisely the state of facts supposed in the charge. There is nothing in the evidence upon which to predicate a charge about " reasonable apprehension."   The proof conclusively shows, that there were no facts or circumstances from which the defendant could infer that he was in danger of great bodily harm ; nor is there any evidence to show that such an impression was produced on his mind.   There is no proof of any conspiracy or concert between Anderson and Murrah ; on the contrary, their meeting was accidental.   The testimony of

Mrs. Rouse amounts to nothing, as she says she heard nothing; and besides, she is shown to be defendant's cousin. A charge, then, about "reasonable apprehension," would have been abstract, and unauthorized by the testimony.

3. If the charge was legally correct, an objection that it was too general, cannot be sustained; the defendant should have asked a more specific charge.—Hodges v. Branch Bank, 13 Ala. R. 455; Cameron v. The State, 15 ib. 385.

4. The whole charge must be taken together; and thus taken, the defendant had the full benefit of every defence upon which he now insists. The first charge is very full, and covers every point of objection now made. The two charges, though numbered separately, constitute in fact but one charge, and, viewed in this light, it is not obnoxious to any of the objections now made.

5. The first charge ought not to have been given, there being no evidence on which to predicate it. The defendant, then, has had the benefit of all the law on which he now insists, when he had no right to it.—Prichett v. The State, at January term, 1853.

CHILTON, C. J.—There is no principle better settled by numerous decisions of this court, than that the court cannot properly withdraw from the consideration of the jury any evidence which tends to establish the plaintiff's case, or the defendant's defence; and any charge which has this effect upon a fair construction of it, is erroneous. The rule is further settled, that when the record shows that an error has been committed against a party, injury will be presumed, unless the record clearly shows that no injury resulted to him; and, as a further exposition of this latter rule, we may venture to assert, that however correctly the judge in his general charges to the jury may lay down the law, yet, if in a subsequent specific charge, he places the case upon the existence of certain facts on which alone it may not be properly made to turn, and the effect of which, if literally followed by the jury, is to withdraw from them the consideration of other facts which either tend to disprove or materially to qualify those on which the charge is predicated, we must intend injury from this error, since it is impossible for this court to determine what effect such charge had upon the finding of the jury. They might have construed the

charge given in connection with the other charges, and thus have found all the facts necessary to make out the case; on the other hand, they may have confined their investigation to the facts mentioned in the last charge, and have predicated their verdict upon them alone, in which event they have not passed upon the *whole case*, and hence injury results to the party against whom they find.

It is thus manifest that the record leaves the matter in doubt as to whether or not injury has resulted; and being left doubtful, it falls within the principle which reverses for the error.

We come, then, to inquire whether the last charge given by the court was erroneous.

This charge substantially informs the jury, that, "if they find that when Anderson was advancing towards the defendant, with his knife open in his hand, the defendant said to him, 'If you intend to use your knife, I will get my gun and shoot you,' and Anderson replied, 'If you are afraid of my knife, I will shut it up,' and did shut up his knife and throw it down on the ground, and the defendant then sprang to his gun, and seized it and fired, the defendant is guilty."

The defence mainly relied upon was, that the accused, from the circumstances in proof, had, at the time he fired his gun, reasonable apprehension of great personal violence, involving imminent peril to life or limb. If he had, it is clear from all the cases, he had the right to protect himself even at the expense of the life of his assailant, if such protection could not be otherwise secured.—Oliver v. The State, 17 Ala. 598; Pritchett v. The State, 22 ib. 39, and cases cited.

It is not our province to say whether, in the case before us, the evidence sustains such defence. It is sufficient for the purposes of this investigation, that there was some evidence *tending* to establish it.

It was a question peculiarly for the jury to decide, whether the defence was made out; and as the facts set forth in the charge, and upon which, as matter of law, the court deduced the defendant's guilt, were not wholly inconsistent with the opposite hypothesis which other facts tended, however feebly, to establish, it follows that the charge, which must be construed with reference to the facts, was erroneous. We cannot judicially know that the prisoner heard what Anderson said, or saw what

he did.  There was one witness, who was present, and who testifies that she did not hear him say any thing about his knife, nor did she see him throw it down.  Whether the prisoner saw or heard him, or whether, seeing and hearing him, he notwithstanding had reasonable apprehension that he was in imminent peril of great bodily harm, are questions which the jury should determine from all the facts and circumstances in proof.  But the jury might well have supposed that, if they found the truth of the facts hypothetically stated in the last charge, these inquiries were superseded.

In Pritchett v. Monroe, 22 Ala. 501, we held that a charge based upon a hypothetical state of facts, which excludes from the consideration of the jury other evidence which is before them, is erroneous, as tending to mislead the jury by creating the impression that they would be authorized to reject the other evidence.  The same principle was re-asserted in Edgar v. McArn, at this term.  Such, we think, is the effect of this charge.

Let the judgment be reversed, and the cause remanded.