# REPORTS

OF

# CASES ARGUED AND DETERMINED

## At January Term, 1854.

———◆———

## HARRISON *vs.* THE STATE.

24  67
110  94

1. In a case of homicide, to justify the killing, it is not sufficient that the deceased had the means at hand to effect a deadly purpose, but he must have indicated, by some act or demonstration, at the time of the killing, a present intention to carry out such purpose, thereby inducing a reasonable belief on the part of the slayer that it was necessary to deprive him of life to save his own; and if the evidence shows no such act or demonstration, no question on the law of self-defence arises.
2. If one man deliberately kill another, to prevent a mere trespass upon property, whether such trespass could or could not be otherwise prevented, it is murder.

ERROR to the Circuit Court of Clarke.

Tried before the Hon. JOHN. A. CUTHBERT.

ROBERT R. HARRISON, the plaintiff in error, was indicted for the murder of one George W. Gilbert; was tried and found guilty, and sentenced to the penitentiary for the term of his natural life.

A bill of exceptions was sealed at the trial, by which it appears that the deceased and Harrison were brothers-in-law; that some time previous to the killing a ditch had been dug by the deceased, some four feet deep, which drained a pond of water that otherwise accumulated on the land both of Harrison and the deceased, their farms lying contiguous; said ditch

allowing the water to flow off, through the land of Harrison, to the woods below, and had been kept open for that purpose about ten years; that on the day previous to the fatal occurrence, there came a heavy rain, and Harrison was seen, the same (Sunday) evening, at work on the edge of the ditch, and the next day it was ascertained to be stopped up by dirt being thrown into it; the result was, the corn of Gilbert, growing in the field, was overflown with water, as much as from one to four acres; that Gilbert sent his two small boys with hoes to open the ditch, so as to let the water pass off; that they proceeded to where it was filled up in the field of Harrison, and returned in a short time and reported that it was filled up to such an extent they could not open it; that the deceased then requested his wife to go and assist the boys, saying, at the same time, that "he did not wish to have any fuss or difficulty with Harrison"; that Mrs. Gilbert and the lads returned to the place, and commenced removing the dirt, when Harrison, who is the brother of Mrs. Gilbert, came, and began with a hoe to fill up the ditch, sprang across it, and struck one of the boys two slight blows with his hoe, one of the blows being upon the face; that the boy then started back to the house, and Harrison said, as he started, "If it is for guns you are going, I will go and get mine," and immediately ran to his house, about one hundred and fifty yards distant, and came back with his gun, saying to Mrs. Gilbert, "If Gilbert comes here I will kill him"; that the boy who went to the house informed his father, the deceased, that Harrison was at the ditch, and would not let them open it; Gilbert, who could see the parties from his house, replied, "It will not do to let the corn spoil, and we must go back and let off the water"; he then took his gun down from over the door, and the little boy took his gun, and they proceeded in an ordinary gait to the ditch; Gilbert came up within a few feet of Harrison, who was on the opposite side of the ditch, and with his gun on his shoulder stopped, looking at his wife, who was near by, and seeming to be about to speak to her, when Harrison discharged his gun at him, which taking effect, he instantly died. Harrison immediately started to run to his house, saying, "If you are not dead now, damn you, I will come back and kill you." The evidence further tended to show, that the opening of the ditch was a benefit to Harrison as well as to the deceased.

The court charged the jury as follows: " If, when Gilbert came armed to the ditch, Harrison had reason to believe that Gilbert was about to shoot him, and that Harrison's only safety was in taking the first shot, then the killing was in self-defence; but that this belief of Harrison must not rest on his fears only: it must be a well founded belief of a danger to his life, or of some great bodily harm, immediately at that time pressing on him."

The defendant's counsel asked the court to charge the jury, " that, if Harrison was in the possession of the land, and had closed up the ditch, Gilbert had no right to use force in opening it, although it might cause his land to overflow"; also, " that if Harrison had a well founded belief that Gilbert came into his field with his gun with the intention of doing him a bodily harm, then Harrison was not bound to wait for Gilbert to execute his intentions, but might act in his own defence." These charges the court refused to give.

The charge given, and the refusal to charge as requested, are now assigned for error.

WILLIAMSON, for the plaintiff in error, argued:

1. That the charge given was erroneous; that, if a man, though in no danger of serious bodily harm, through fear, alarm or cowardice, kills another, under the impression that great bodily injury is about to be inflicted on him, it is neither manslaughter nor murder, but self-defence.—Granger v. The State, 5 Yerger 459; Wharton's Am. Crim. Law 590, 591, 592.

2. That the charges asked should have been given; that a reasonable apprehension of death, or of great violence to the person, will justify a killing in self-defence by the party assailed.—5 Yerger 459, *supra;* 11 Humph. 200; Oliver v. The State, 17 Ala. 587.

M. A. BALDWIN, Attorney General, *contra,* insisted:

1. That both the charges asked were abstract, as there was no evidence that the deceased used force in opening the ditch, nor any circumstances from which it might be inferred that he came into the field with the intention to do Harrison a bodily harm.

2. That a bare belief, on the part of the slayer, is not suffi-

cient, unless the circumstances are such as induce him reasonably to think that another intends to kill him, or to do him some great bodily harm, immediately.—Oliver v. The State, 17 Ala. 599 ; The State v. Scott, 4 Iredell 415 ; The State v. Morgan, 3 Iredell 193 ; Wharton's Crim. Law 260.

CHILTON, C. J.—The charge which was given, when considered with reference to the facts set out in the bill of exceptions, was more favorable to the defendant than the law would authorize. There was no evidence that Gilbert was about to shoot Harrison, when the latter killed him ; on the contrary, he was standing with his gun on his shoulder, and about speaking to his wife, when he was shot down, and this shooting was carrying out a threat made to the wife of Gilbert by Harrison, that he would kill him if he came there.

The law of self-defence, so far as the proof set out in the record shows the transaction, had nothing whatever to do with the case. Harrison, in the first instance, brought on the difficulty, by a most unneighborly and malicious act in stopping up the ditch, thus injuring himself in order to overflow the growing crop of the deceased. When it was attempted to be opened, he was there, throwing in the dirt, as the wife and children were engaged throwing it out ; he inflicts personal violence upon one of the children with his hoe, and when the child left, he flies to his gun; and without necessity, and in the absence of any attempt or demonstration of an intention to injure him, on the part of the deceased, other than having his gun upon his shoulder, he deliberately shoots him down while in the act of speaking to his wife.— It was calculated to mislead the jury to charge on the law of self-defence under such circumstances, for they might well have inferred that the court would not give a charge which was abstract, and hence, that merely having a gun upon his shoulder, without more, put the life of the prisoner in imminent peril, justifying him in what he did. Such is not the law.

It was correctly said by Ruffin. C. J., in The State v. William Scott, 4 Iredell's Law Rep. 409, that "the belief that a person designs to kill me will not prevent my killing him from being murder, unless he is making some attempt to

execute his design, or, at least, is in an apparent situation to do so, and thereby induces me reasonably to think that he intends to do it immediately." The " situation" spoken of is, not that he has the means at hand for effecting a deadly purpose, but that; by some act or demonstration, he indicates at the time of the killing a present intention to carry out such purpose, thereby inducing a reasonable belief, on the part of the slayer, that it is necessary to deprive him of life to save his own.—Pritchett v. The State, 22 Ala. 39; Wharton's Crim. Law 260.

It is manifest, from what we have said, that there was no error in refusing the charges asked by the counsel for the defendant in the court below.

Whether Gilbert had or had not the right to use force in opening the ditch, was a question which did not arise upon the proof. It is perfectly clear that the prisoner had no right to take his life to prevent his opening it.—1 Russell on Crimes 663. If one man deliberately kill another, to prevent a mere trespass upon property, whether such trespass could or could not be otherwise prevented, it is murder.— State v. Morgan, 3 Iredell's Law Rep. 186 ; Commonwealth v. Drew, 4 Mass. 391 ; Wharton's Crim. Law 258.

As to the last charge asked and refused, it is fully covered by what we have said as respects the charge given.

There is no error in the record, and the sentence of conviction is affirmed.