## HARRIS *vs*. THE STATE.

[INDICTMENT FOR GAMING.]

1. *Playing game with device or substitute for cards.*—A conviction cannot be had, under an indictment for gaming, on proof that the defendant played a game of euchre with dominoes, if the jury are satisfied from the evidence that the game of euchre with dominoes is an older game than euchre with cards, and that both cards and dominoes are still retained in common use in playing euchre ; unless the evidence also satisfies the jury that, as matter of fact, dominoes were used in that particular game as a substitute for cards, although that fact was not intended by or even known to the players themselves.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. WM. S. MUDD.

THIS case was before this court at its January term, 1858, when the judgment of the circuit court was reversed, and the cause remanded.—See 31 Ala. 362.   On a subsequent trial in the circuit court, the defendant reserved the following bill of exceptions, which shows all the points presented for revision in this court :

" On the trial of this cause it was proved, that the defendant, within twelve months before the finding of the indictment, at a store-house in said county where goods, wares and merchandise were kept for sale and sold, played at a game with dominoes ; that said game was played with twenty-eight pieces of bone, numbered from one to six, besides blanks ; that there were seven suits of said bones ; that the game played was generally called *dominoes*, but sometimes *euchre*, and was played by from two to five persons, in the manner following : The twenty-eight dominoes were turned with the spotted sides next to the table, and were shuffled about on the table ; each player then took five pieces, and another piece, called a *trump*, was turned up by the player who sat next to the dealer on the right.   The dominoes having been drawn by each player, and the trump turned up, the player next to the

dealer on the left would say, either that he would pass, or order it up; and so on to each player, until it reached the dealer, who could either pass or take it up; if he took it up, he had to discard one from his hand; if it was ordered up by either of the players, the dealer had to take it up and discard; and if the one who ordered it up failed to make three tricks, his adversary would make two in the game, and he who ordered it up would be euchred; but, if he who ordered it up made three tricks, he would make one point in the game, and, if he made all five of the tricks, would make a march. The number of points required to make (?) *were* from five to eleven, and sometimes more, as the players might agree before commencing. Each player had to follow suit, if he could; and if he could not, then he might trump, or play any other piece he chose. The end of the domino having the largest number of spots was the one that was known as the suit."

" It was proved, that the defendant did not know how to play a game with cards, and knew nothing about cards; that he was a member of the church, and a strictly moral and religious man; that those who played with him were some of the best men in the county; that the proprietor of the store-house was also a member of the church, a moral man, and one who would not permit cards to be played in his house under any circumstances; that the defendant did not know that it was any violation of the law to play the game with dominoes which he played, and that said game had been so played in said town for about three years."

The State introduced several witnesses, as experts, who testified to the manner in which the games of euchre with cards and euchre with dominoes were played, and the several points of difference and resemblance between the two games. Several exceptions were reserved by the defendant to the rulings of the court in reference to the testimony of these witnesses, which have no material connection with the points here decided. " On cross examination, said witnesses testified, in substance, that they did not know which was the older game, euchre with dominoes or euchre with cards, nor could they say whether

or not either one of them was derived from the other; that since a full deck of cards consisted of fifty-two, and a euchre deck of cards of only thirty-two, they were inclined to the opinion that the game of euchre with cards was derived from some other game, and that the game of euchre with dominoes was the older game of the two; that euchre with dominoes was a regular and proper domino game, and had certain rules and principles controlling it, which were peculiar to it, and which did not exist in the game of euchre with cards," &c.

"After charging the jury in the language of the supreme court in this same case, at the last term of said court, as to the four points necessary to be proved by the State in order to convict the defendant, the court further charged the jury as follows:

"1. That if the defendant is guilty of violating the law, the jury have no right to look to his character, or that of any of the other parties who may have played with him; that the law is no respecter of persons, but deals alike with all men; that whether the party charged be respectable or disrespectable, high or low, worthy or unworthy, a christian or a sinner, if he has violated the law, he must suffer the penalty, as courts and juries must determine his guilt or innocence from the law and evidence alone.

"2. That if, at the time the game was played for which the defendant was indicted, dominoes had become used as a substitute or device for cards in playing euchre, it made no difference whether or not the defendant knew that they had become so used; that if he played a game of euchre with dominoes after they had become used as such substitute or device, at a store-house where goods were at the time sold to the public, and in said county, within twelve months before the finding of the indictment, then he would be guilty.

"3. That if the defendant used the dominoes as a substitute or device for cards, in playing the game of euchre for which he has been indicted, it would make no difference whether the dominoes had ever before been used for that purpose or not.

"4. That it was not necessary for the State to prove that the games of euchre with cards and euchre with dominoes are the same, or that a proper game of euchre with cards could be played with dominoes; but that it was sufficient to prove that they are substantially the same, played on the same principles, and with the same result.

"5. That the jury might look to the manner in which the games are played with cards and dominoes—the number of each used in the game, the following of suit, the number of tricks required to constitute points, the number of points to make the game, the particular names given to the number of tricks taken by each player, &c.— as circumstances from which to determine whether the dominoes were used by the defendant as a device or substitute for cards, or had become so used as a substitute for cards in playing euchre at that time.

"6. That it was immaterial whether cards or dominoes were invented first in point of time, or whether the game of euchre at cards or at dominoes was first played; that it was sufficient to prove that dominoes, in playing the said game of euchre for which the defendant was indicted, were substituted by him for cards, or had at that time become a device or substitute for cards.

"7. That it was immaterial whether or not the defendant knew that he was violating the law; that the question was, whether the law had been violated by him; and if so, that it was the duty of the jury to so find, without reference to the defendant's knowledge or ignorance that he was violating the law.

"8. That it was not material whether the number of cards used to play euchre, and the number of dominoes used to play euchre with dominoes, are the same or not; nor whether a person who could play the one would have to learn to play the other before he could play it, if dominoes were in truth substituted by the defendant in playing said game, or had become used at the time as a device or substitute for cards.

"9. That the statute prohibits, not only the playing at cards at a public house, but also the playing at any device or substitute therefor at such house."

To each of these charges the defendant excepted, and then requested the following written charges:

"1. That the jury, before they can find the defendant guilty, must be satisfied beyond a reasonable doubt that the game of euchre with cards is older than the game of euchre with dominoes.

"2. That the jury, before they can find that dominoes were used as a device or substitute for cards in playing the game of euchre, must believe that the game of euchre with cards is an older game than euchre with dominoes.

"3. That if the jury are not satisfied beyond a reasonable doubt as to whether the game of euchre with cards or with dominoes is the older, then they must acquit the defendant.

"4. That if the jury believe from the evidence that the game played with dominoes was a proper game at dominoes, as well as at cards; and that the defendant played with dominoes as and for a game with dominoes, and was not playing a game at cards, using the dominoes as a substitute or device for cards, they must find the defendant not guilty.

"5. That the jury, before they can find the defendant guilty, must believe that he used dominoes in the game as a device or substitute for cards.

"6. That if the jury believe all the evidence in the case, they should find the defendant not guilty."

The court refused each one of these charges, and to each refusal the defendant excepted.

I. W. GARROTT, for the prisoner.

M. A. BALDWIN, Attorney-General, *contra*.

STONE, J.—When this case was before in this court, (January term, 1858,) we stated four questions as properly referrible to the jury; and declared, that an affirmative response by that body to each of these four questions would entitle the State to a conviction of the defendant. One of those four questions was stated in the following language: "Had dominoes either become a device or

25

substitute for cards in playing the game of 'euchre' at the time the defendant played at the game for which he is indicted; or were they in fact used in that single game, though never before, as a device or substitute for cards." In another place we said, "It will be noticed, that the foregoing question numbered four is put or stated alternatively; and to prevent any misapprehension, it is proper to say that, if the jury decide either branch of said alternative question in the affirmative, that meets the requirements of the law, so far as the said question four is concerned."

The former record was silent on the question, whether cards or dominoes were first used in playing the game of euchre. The present record contains some evidence on that question. It is now contended, that if euchre with dominoes is an original, independent game, in use before euchre with cards was introduced, then dominoes cannot become a substitute for cards, in playing the game of euchre. We do not assent to this proposition, to the extent claimed. Instruments, older and first in use, might be employed as a substitute for those of more modern discovery. Oars, for many supposable reasons, might be substituted for the more modern steam-engine, in propelling a steam-vessel.

There is, however, in this inquiry, one point of view in which priority of use becomes material. We said it was sufficient, if dominoes had "become a device or substitute for cards in playing the game of euchre, at the time the defendant played the game for which he is indicted." The only legitimate import of this language is, that if, from former use, dominoes, in playing the game of euchre, had become stamped with the character of a device or substitute for cards, then euchre with dominoes was within the prohibitory terms of the statute. If, however, euchre with dominoes was an original, independent game, older in fact than euchre with cards, and the latter game had not substantially supplanted the former, then dominoes could not become stamped with the character. of a device or substitute for cards in playing the game of euchre. The paddle-wheels, driven by the steam-engine,

may be a device or substitute for the oars of the row-boat; the latter, while both motive powers continue to be employed, cannot become stamped with the character of a device or substitute for the paddle-wheels of the steamboat.

That portion of the sixth charge given by the court, which declares it "immaterial whether the game of euchre at cards or at dominoes were first played in point of time," is in conflict with the views above expressed. In one phase of the 4th alternative proposition, priority of use was material. The jury should have been instructed, that if euchre with dominoes, as played by the defendant, was older in point of time than euchre with cards, and if both instrumentalities were still continued and retained in common use in playing the game, then dominoes can not have become stamped with the character of a device or substitute for cards in playing the game of euchre. In this event, the defendant cannot be convicted, unless the jury are convinced, *as a matter of fact*, that dominoes were used in this particular game as a substitute for cards.

Lest the jury may be misled by the sentence last above, we will add, that it is not important that the parties play-ing intended, or even knew, that dominoes were, in the game played, a substitute for cards.

The error in the 6th charge, above noted, was not rem-edied by any other part of the charge.—Holmes v. The State, 23 Ala. 17.

We offer no opinion on the weight of the evidence. That is a question for the jury.

We have found no other errors in the record.

Reversed and remanded.