# BUGG *vs.* THE STATE.

### [INDICTMENT FOR MURDER.]

1. *Oath administered to jury ; what recital of, not sufficient to uphold verdict.*—The judgment entry in this case recites : " Thereupon came a jury of good and lawful men, to-wit, A. L. Mathews and eleven others, good and lawful men, who being duly elected. tried, and sworn to well and truly try the issue joined and true deliverance make between the State of Alabama and the defendant, upon their oaths do say " &c.— *Held,* upon the authority of *Joe Johnston v. The State,* to be insufficient to uphold the verdict.

2. *List of jurors and copy of indictment; when failure to serve on defendant is a reversible error.*—Where the defendant is in actual custody, charged with a capital offense, the record must show that defendant was served with a copy of the indictment and list of jurors at least one entire day before the day set for his trial.

APPEAL from Circuit Court of Montgomery.
Tried before Hon. JAMES Q. SMITH.

The appellant, who was indicted for the murder of Harper James, was convicted of murder in the second degree and sentenced to the penitentiary for twenty-five years. The record shows that he was confined in jail at the time of the trial, and it does not show service upon him of a copy of the indictment and list of jurors summoned for his trial at least one entire day before the day set for his trial.

The following is the judgment entry so far as relates to the verdict of the jury: " Came the State by its attorney, and the defendant in his own proper person and by attorney, and the bill of indictment pending against him for murder being read to him, he pleaded thereto not guilty, and thereupon came a jury of twelve good and lawful men, to-wit, A. L. Matthews and eleven others, good and lawful men, who being duly elected, tried, and sworn to well and truly try the issue joined and a true deliverance make between the State of Alabama and the defendant, W. R. Bugg, upon their oaths do say, 'We, the jury, find the

Bugg v. The State.

prisoner guilty of murder in the second degree, and sentence him to the penitentiary for twenty-five years."'

The appeal is taken on the record, and the errors assigned are—

1. That the jury was not properly sworn.

2. That it does not appear that a copy of the indictment and list of jurors were served upon appellant as required by law.

WATTS & TROY, for appellant, cited *Johnson v. State*, at present term, and *Lacy v. State*, 45 Ala. 80.

JOHN W. A. SANFORD, Attorney-General, *contra.*—The record is a history of the facts of a case from its commencement to its conclusion. It does not, in all its parts, set out in *ipsissimis verbis*, what is said. A substantial narration of all the events of a case in a clear, orderly and perspicuous manner, is all that is required. No form is recognized as absolutely necessary.— *Crist v. The State*, 21 Ala. 137-48; 1 Bish. Cr. Pr.

The record in this case recites that an oath was administered to the jurors to the effect that they would well and truly try the issue joined, and true deliverance make. It does not set forth the words or the form of the oath. No objection was made to the mode in which the jurors were sworn. In the absence of any evidence to the contrary, or any exception on the part of the prisoner, the court is bound to presume that the legal oath was duly administered; or, if there was any irregularity in swearing the jury, it was waived by the accused.—*Hall v. The State*, at present term.

For many years the records of criminal cases in Alabama only stated the fact that the jurors were "elected, tried, and sworn well and truly to try the issue joined." Such an entry was considered sufficient by the officers charged with the duty of making up of records, and their custody, and has indeed been decided in the following cases to contain all that is necessary to show that the prisoner was tried by his peers duly sworn: *Pile v. The State*,

5 Ala. 72–74; *Crist v. The State*, 21 Ala. 137–148; *McGuire v. The State*, 37 Ala. 161–163. Reason, as well as authority, sustains the sufficiency of the above entry. How could the prisoner be "well and truly tried" in a court of Alabama, unless he was tried on proper evidence according to law?

Indeed, the only cases that deny the correctness and sufficiency of the above entry have been decided at the present term.

If this recitation of the swearing of the petit jury be deemed insufficient because the record does not contain what it never purposed to contain, why is the entry that the grand jurors were duly "drawn, impanneled and sworn," considered sufficient, without setting out the oath that they would "diligently inquire, and due presentment make," &c.? This caption is the part of every indictment. If the record should contain the words of the oath, instead of a recital of the fact that the jurors were sworn, then no person has been properly indicted for years in Alabama. Notwithstanding this fact, many have been convicted and punished, and that, too, when it was the duty (as clearly expressed in Andrew Johnson's case,) of the court to examine the whole record, and if any error exists, to reverse the judgment.

It seems to be just as important that the grand jury should be properly organized and legally sworn when they enter upon their duties, as it is that the jurors trying the cases should be properly impanneled and sworn. If a recitation of the fact of the administration of an oath, without stating what it is, be sufficient in the first instance, why should not the recital of the same fact be sufficient in the second? That, in the first instance, it is sufficient, is shown by the fact that in its search for errors, this court has never discovered that such a statement in the record of the drawing and swearing of the grand jury is erroneous.

The record does not set out the oath, but only states for what purpose the jurors were sworn. It is submitted, that to reverse the case for not employing words in a particular collocation, is almost too technical. We wonder that a

notorious murderer was acquitted formerly because the word "brachio" was spelt "bracio," and another went unwhipped of justice because "alias" was spelt "alius." Are we not relapsing into the reign of technicalities when we reverse the sentence of a murderer because the clerk, in describing or telling what was done, omits to say that the jurors were sworn "a true verdict to render according to the evidence?"

B. F. SAFFOLD, J.—The judgment is reversed and the cause remanded, on the authority of *Joe Johnson v. The State*, at the present term, in respect to the oath administered to the jury. And, of *Lacy v. The State*, 45 Ala. 80, as to the service on the prisoner of a copy of the indictment and a list of the jurors summoned for the trial.

## CROKER *vs.* THE STATE.

[INDICTMENT FOR ROBBERY.]

|  |  |
|---|---|
| 47 | 53 |
| 115 | 82 |

1. *Robbery ; description of property, what insufficient.*—In an indictment for robbery, a description of the property taken as "ten dollars in money of the United States currency," is too indefinite.
2. *Same ; what equivalent to a taking from the person.*—Property taken in the presence of the owner, under circumstances constituting robbery, is taken from his person.
3. *Copy of indictment and list of jurors ; failure to serve on defendant, when reversible error.*—The failure to serve a copy of the indictment and list of jurors on the defendant in actual custody, one entire day before the trial, is a reversible error.
4. *Sentence ; failure to do what, invalidates.*—So, too, is the failure to ask him, when convicted, if he has anything to say why sentence should not be passed on him.
5. *Arrest of judgment ; what not ground for.*—The misconduct of the jury in dispersing and mingling with other persons after the cause has been submitted to them, is ground of new trial, but not of arrest of judgment.
6. *Quere.*—Whether the verdict, " We, the jury, find the defendant guilty