IN

# THE SUPREME COURT

## OF ALABAMA.

### JUNE TERM, 1874.

| 51   1|
| 96  87|
| 51   1|
| 135  14|
| 51   1|
| 141  35|

## Lewis v. The State.

### Indictment for Murder.

1. *Homicide in self-defence.* — To make out a case of homicide in self-defence, it is not sufficient that, at the time of the killing, the deceased had a pistol presented at the prisoner, and was advancing on him "with a *hostile intent.*" There must have been an intent on the part of the deceased, coupled with a capacity, or seeming capacity, to take the life of the slayer, or to inflict on him some great bodily harm ; and this intent must have been evidenced by some present act or demonstration, inducing in the mind of the slayer a reasonable belief that the danger to his life or person was imminent.

2. *Same.* — If the slayer was himself the first aggressor, and was seeking to enforce the payment of an illegal demand, having armed himself with a double-barrelled shot-gun, he cannot invoke the doctrine of self-defence merely because the person assailed was approaching him, with a pistol presented at him, and did not stop when ordered to "stand back."

3. *Sufficiency of verdict.* — A verdict in these words : "We, the jury, find the defendant guilty of murder in the second degree, and *recommend* his sentence to the penitentiary for twenty years," is sufficiently formal and definite to sustain a judgment and sentence of imprisonment in the penitentiary for twenty years.

4. *Service of copy of indictment, with list of jury.* — In a criminal case, if the record does not show that the prisoner was in actual confinement, although it contains an order of the court requiring that a copy of the indictment, with a list of the jurors summoned for his trial, shall be served on him (Rev. Code, § 4171), he cannot raise the objection for the first time on error, that the record does not show a compliance with the order.

5. *Venire for trial of capital felony.* — The order of the court in this case, as to the summoning of the jury for the trial of the prisoner, held to be a substantial compliance with the requirements of the statute, Rev. Code, § 4173.

6. *Oath of petit jury.* — When the record in a criminal case shows that the jury were sworn "to well and truly try, and true deliverance make, between the *people* of the State of Alabama and the prisoner at the bar," this is not substantially the oath which ought to be administered to them (Rev Code, § 4092) ; and the judgment of conviction will be reversed on account of this error.

7. *Reversal after conviction of less offence than charged in indictment.* — On the re-

versal of a judgment of conviction for murder in the second degree, under an indictment for murder, the cause will be remanded for a new trial, not under the indictment generally, but for murder in the second degree only.

FROM the Circuit Court of Lauderdale.

The record in this case having been lost, the reporter cannot state the name of the presiding judge in the court below. Nothing but the opinion has come to his hands.

MOORE & PICKETT, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

PETERS, C. J. — This is an indictment for murder. The defendant in the court below was found guilty of murder in the second degree, and sentenced to confinement in the penitentiary for twenty years. From this judgment and sentence he appeals to this court. The errors insisted on arise principally out of matters reserved in the bill of exceptions. They will be discussed below, as they are mentioned in the assignment.

The evidence below tended to show that the defendant and the deceased had quarrelled about a game at cards. The prisoner threatened to shoot or kill the deceased, if he did not settle up about the game, which, it seems, the parties had just finished. Upon the defendant's request to settle, the deceased said he would settle when he got ready to do so, but took no steps to get ready. At that time, it did not appear that either party was armed. But, immediately after the quarrel and refusal to settle, the prisoner went off, and came back with a double-barrelled shot-gun, to the place where he had left the deceased, saying that he intended to shoot the deceased if he refused to settle about the game at cards about which they had quarrelled. When the prisoner returned, thus armed, the deceased approached him ; but it is not certain whether he had his hands extended, or had them in his pockets. As he approached, the defendant retreated, with his gun presented, saying, " Stand back." The deceased did not heed this warning, and replied, " Shoot, if you want to. I can shoot as quick as you ! " Upon this the prisoner fired his gun, and killed the deceased almost instantly. Immediately after firing the gun a pistol shot was heard ; and a pistol and a dirk were found lying by the side of the deceased, who had sunk down where he was shot. Upon this evidence, the court was asked by the defendant, in writing, to give this charge to the jury : " If the jury believe that defendant had procured his gun, yet, unless he made an attempt to shoot with it, he had done nothing unlawful ; and if they believe that the deceased pursued

the defendant, armed with a pistol and knife, and had drawn a pistol, and had it presented at defendant *at the time*, then he had the right to shoot in self-defence, if they believe the deceased was pursuing him with a hostile intent."

This charge was not an accurate enunciation of the law of self-defence. The right of self-defence is simply the right to repel force by force unlawfully exerted. The repellant force, thus permitted to be used, must be protective, and not merely aggressive. *Shippy's Case*, 10 Minn. 223 ; *Holmes* v. *The State*, 23 Ala. 17. When protection is achieved, the legitimate end of the force allowed to be resorted to is accomplished. It should then cease. Upon this principle, it is allowed to take life in order to protect life, or to protect the person assailed from serious bodily harm. *Oliver* v. *The State*, 17 Ala. 587, 598. But the danger to the life or limb of the slayer must be apparent and pressing, and it must be of such degree and character as threatened a fatal result, in order to justify a homicide. A mere pursuit " with hostile intent " is not enough. And this is all that the charge asserts. But the pursuit must be coupled with an intent and a capacity, or seeming capacity, to take life, or to inflict some great bodily harm upon the party pursued. It must appear that the assailant, by his conduct and acts, impressed the mind of the slayer that it was his purpose to kill at the time of the fatal blow. The deceased must not only have the means at hand for effecting a deadly purpose, but it must also appear, by some act or demonstration of his, that it was his intention at the time of the killing to carry out his purpose, thereby indicating a reasonable belief on the part of the slayer, that it was necessary to deprive the assailant of his life to save his own. *Harrison* v. *The State*, 24 Ala. 67; *Prichett* v. *The State*, 22 Ala. 39; *Dupree* v. *The State*, 33 Ala. 380. The proposition of the charge here insisted on seems to be this : If a person, having about him a pistol and dirk, or knife, the pistol being presented, pursue another " with hostile intent," the pursuer may be killed by the person pursued, in self-defence. In this form, the proposition wholly omits the impending necessity that should exist for the killing, in order to protect the life or limb of the slayer. This necessity is an ingredient of the excuse. It cannot be assumed, or a mere hostile pursuit substituted in its place, unless the jury find that the hostile pursuit was itself a fatal menace to the life or person of the slayer.

2. But, beside this, the charge should not have been given for another reason. The testimony tends to show that the defendant was the first aggressor ; that his demand upon the deceased was an improper and illegal claim. It was money, or something else, won at gaming, which was not the subject

of a legal claim. Rev. Code, §§ 1874, 1875, *et seq.* It has long been settled in this country, that one cannot bring upon himself the very necessity which he sets up for his defence. The proof very clearly shows that the defendant, after the first quarrel, went off, and returned with his gun, to shoot the deceased ·if he refused to do what he had previously requested. This· put him wholly out of the pale of the right of self-defence, unless it was shown that after his return he declined the combat,· which was not the case here. He was, therefore, wholly inexcusable. *Neeley's Case*, 20 Iowa, 108 ; *S. C. Cases on Self-Defence*, p. 96, and cases ·there cited. The refusal of the charge above quoted was, therefore, free from error. ,

,. 3. The next objection is to the judgment of conviction. It is ·that it is not sustained by the verdict. The verdict is in these words : " We, the ·jury, find the defendant guilty of murder in the second degree, and *recommend* his *sentence* to the penitentiary for twenty years." This verdict is founded on the Code. The Code declares, that " any person, who is guilty of murder in the second degree, must, on conviction, be imprisoned in the penitentiary, or sentenced to hard labor for the county, for not less than ten years, at the discretion of the jury." Rev. Code, § 3654. It is contended for the defendant, that the word *recommend* does not sufficiently declare the exercise of discretion by the jury in fixing the period of the imprisonment in the penitentiary. It is true that this is not possibly the most apt word that could have been·used in such a case. But it certainly fixes the time of the imprisonment with sufficient clearness to enable the court to carry the verdict into effect by its judgment. This is enough. The court will construe the language used in reference to the purpose necessarily intended.

4. It is also further objected, that the record does not show that a copy of the indictment, and a list of the jurors summoned for his trial, including the regular jury, were delivered to the defendant at least one entire day before the day appointed· for his trial. This is only necessary when the defendant " is in actual confinement." Rev. Code, § 4171. Here, the record is wholly silent as to whether the defendant was in custody or not. But there was an order of the court, requiring such delivery of the copy of the indictment and list of the jury. And there was no objection in the court below that this order was not properly executed. It will, therefore, be presumed that the officers of court did their duty, or that the execution of the order was waived. This objection ·is not sufficiently sustained.

5. It is also contended, that the order for the summoning

of the jurors for the trial of the accused is not made in conformity with law. The law prescribes that, "For the trial of a person charged with a capital offence, or two or more such persons tried together, the court must make an order, commanding the sheriff to summon not less than fifty, nor more than one hundred persons, including those summoned on the regular juries for the week, or term when the term does not exceed one week." Rev. Code, § 4173. In this instance, the cause was tried in the circuit court of Lauderdale county. The court in this county may continue in session for two weeks. Rev. Code, § 750, page 232. The order of the court in this prosecution was to summon one hundred persons, "including the regular juries for the week, to be passed on, on Wednesday, the 15th day of April, 1874." This order was a substantial compliance with the section of the Code above quoted.

6. The last objection urged to the proceedings in the court below is to the oath administered to the jury on the trial. Upon this question, the record makes the following recitals: " Wednesday, April 13th, 1874. And now comes again the solicitor, and the defendant at the bar ; and the issue being joined between the people of the State of Alabama and the prisoner at the bar, comes a jury of good and lawful men, to wit, Lewis Hudson and eleven others, who, being duly elected, charged, and sworn to well and truly try, and true deliverance make, between the *people* of the State of Alabama and the prisoner at the bar, upon their oaths do say," &c. This oath cannot be sustained. It is not substantially the oath required and prescribed by the statute. Rev. Code, § 4092 ; 37 Ala. 161 ; 47 Ala. 9 ; 47 Ala. 50 ; *De Bardelaben* v. *The State*, January term, 1874. The issue in a criminal prosecution in this State is not between " The *people* of the State of Alabama" and the prisoner at the bar. The constitution prescribes that " The style of all processes shall be *The State of Alabama*, and all prosecutions shall be carried on in the name, and by the authority of, ' The State of Alabama,' and shall conclude, against the peace and dignity of the same." Const. of Ala. 1867, Art. VI. § 19. The issue in this prosecution is, therefore, between " The State of Alabama" and the prisoner at the bar, the said Elijah Lewis. The oath administered in this case was to try an improper issue, and was not in the form prescribed by law. This was error. For this error, the judgment of the court below is reversed, and the cause is remanded for a new trial, on a charge of murder in the second degree. See *Bell & Murray* v. *The State*, 48 Ala. 684 ; Rev. Code, § 3654. The appellant, said Elijah Lewis, will not be discharged, except by due course of law.