# CASES

IN THE

# SUPREME COURT OF ALABAMA.

DECEMBER TERM, 1877.

## Commander *v.* The State.

*Indictment for Murder.*

1. *Oath of petit jury.*—When the jury, in a criminal case, are sworn to "well and truly try, and true deliverance make, between *the people* of the State of Alabama and the prisoner at the bar," this is not substantially the oath which ought to be administered to them (Rev. Code, § 4092); and the judgment will be reversed on account of this error.

2. *Competency of jurors; objection to venire.*—Persons who have been summoned as witnesses for the prosecution, and persons who served as jurors on a former trial of the case, are not competent jurors, and may be challenged for cause; but the *venire* will not be quashed because they are knowingly summoned as jurors by the sheriff, when the record does not show that, without them, there was not a sufficient number of good and lawful men from whom a jury might be selected.

3. *Evidence showing state of feeling between prisoner and deceased.*—The fact of anticipated litigation between the deceased and the prisoner, who were connected by marriage, or of family litigation in which the prisoner felt an interest, connected with his declaration that he would kill any one who sued him under like circumstances, is admissible evidence for the prosecution, as bearing on the question of the relations subsisting between him and the deceased, and the state of his feelings towards the deceased; but evidence touching the merits of such litigation is not admissible for him in rebuttal.

4. *Presumption of malice from use of deadly weapon.*—When life is taken by the direct use of a deadly weapon, the law presumes that the killing was malicious, unless the evidence establishing the killing also shows circumstances of justification, mitigation, or excuse, which overturn that presumption.

FROM the Circuit Court of Sumter.

Tried before the Hon. LUTHER R. SMITH.

The indictment in this case charged that the prisoner, Robert Commander, "unlawfully, and with malice aforethought, killed Charles Hagan, by shooting him with a gun."

"When the cause was called for trial," as the bill of exceptions states, "the defendant objected to the *venire* specially summoned, and moved to quash the same ; and, in support of said motion, proved to the court that W. T. McKnight, D. L. Kirkland, Gray Ellis, and W. B. Jones, who were summoned as jurors on said *venire*, were also summoned, by the identical sheriff who summoned them at this term, as jurors on the *venire* to try this case at the last term of the court, and were impanneled and sworn, and sat as jurors in the case at that term, the result being a mistrial ; and that James M. Lee" and six other persons, whose names are specified, "who were summoned as jurors for the trial of the case at this term, were also summoned by said sheriff, as witnesses for the prosecution in said cause at said last term, and were then examined as witnesses for the prosecution, and were now in attendance on the court as witnesses for the prosecution. The said proof being made, and the facts alleged in support of said motion, the court overruled the motion, and refused to quash the *venire ;* to which action of the court, overruling said motion, and putting said *venire* on him, the defendant, by his counsel, excepted. A jury was then impanneled from said *venire*, and the following oath, and none other, was then and there administered to each of them : 'You do solemnly swear, that you will well and truly try, and true deliverance make, between the people of the State of Alabama and Robert Commander, the prisoner at the bar, whom you shall have in charge, and a true verdict render, according to the evidence : so help you God.'

"On the trial, the State proved that one John Swann and his sister, who was the defendant's wife, were the children of James B. Swann, deceased ; that the said John Swann and defendant and his wife were, at the time of the homicide, in the possession of the place occupied by the said James B. Swann as a homestead during his life ; that after the death of said James B. Swann, his widow, who was the stepmother of said John Swann and defendant's wife, married said Hagan, and was his wife at the time of the homicide ; that said Hagan and his said wife, prior to the homicide, had employed attorneys to sue said John Swann for the recovery of said homestead, in right of Mrs. Hagan as the widow of said James B. Swann ; that said attorneys had informed John Swann of said proposed litigation, and that said defendant had also heard of it prior to said homicide : all to show a motive on the part of said defendant to kill said Hagan. The State introduced evidence, also, tending to show that, a few days before the killing, the defendant had said, that Hagan had sued John Swann for his land, and

that, if any one were to sue him so, he would kill him. The defendant then presented, and offered to prove the execution of the deed, under which said James B. Swann had taken and held possession of said land;" which conveyed to him an estate only during the life of the grantor, J. S. Broome; "and, in connection therewith, to prove that said Broome had died before said James B. Swann, and that said James B. claimed said lands by no other title. The State objected to the introduction of this evidence, and the court sustained the objection; to which ruling, excluding said proposed evidence, the defendant then and there excepted. The State proved, that said Hagan, at the time of the homicide, was quite drunk; and the defendant introduced evidence tending to show that said Hagan, when drunk, had the character of being a dangerous, violent, blood-thirsty man."

The court charged the jury, in writing, as follows: "There are some facts in this case which are undisputed; that Charles Hagan is dead, and that his death was caused by a gun-shot wound from a weapon in the hands of the prisoner at the bar. What was the motive in the breast of the prisoner that actuated him at the time he fired the fatal shot? It is a principle of law, founded upon reason and the experience of mankind, that every man is presumed to intend the natural consequences of his own acts. *When life is taken by the direct use of a deadly weapon, the law presumes that the killing was malicious, and casts on the defendant the onus of rebutting it, unless the evidence establishing the killing also shows circumstances of justification, excuse, or mitigation, which overturn that presumption.* So, in this case, if the jury believe, from the evidence, that the prisoner at the bar killed Charles Hagan with a gun, the law presumes that the killing was malicious, and imposes on the defendant the burden of rebutting that presumption, unless the evidence which proves the killing also shows it to have been done without malice. Do the facts elicited from the witnesses show that the homicide was not done with malice? The defendant says, that he shot the deceased without fault on his part, and to save his own life, or to prevent great bodily harm to his person. Every one has the right, in a proper and lawful manner, to defend his own person and property, against one or many, who manifestly intend, or endeavor, by violence or surprise, to commit a known felony on either. But, to justify the taking of life, there must be an imperious necessity existing to prevent the commission of a felony or great bodily harm, or such appearance of necessity as would impress a reasonable, prudent man (?) that it actually existed. *This necessity cannot be said to have existed, if the defendant could have avoided*

*the combat, without danger to his life or limb ; as if he voluntarily brought on the combat.* A man can not create a necessity, and then claim the benefit of it. In the case of *Eiland v. The State*, 52 Ala. 332, our Supreme Court has stated the law very clearly, in these words : 'There may be cases of murderous assaults, or of assaults with intent to commit other atrocious felonies, from which it is not the duty of him who is assaulted to retreat. When, however, the assault is made on sudden quarrel, and a mutual combat ensues, retreat, if possible, to avoid the threatened danger, is a duty. For, as is said in *Commonwealth v. Drum*, 58 Penn., when it comes to a question, whether one man shall flee, or another man shall live, the law decides the former shall flee, rather than the latter shall die.' The essential inquiry for the jury to determine is this: was it necessary for the prisoner to kill Charles Hagan, to save his own life, or to prevent great bodily harm to his person? or, were the circumstances attending the killing such as to impress the defendant with a reasonable belief that such a necessity existed, and that it was imperious and pressing at the time of the killing? and *did the defendant do nothing to bring on the difficulty, or attack, in which Charles Hagan was killed by him?* That is for the jury to say, from all the circumstances proved in the case.

"But the defendant says, that the deceased was a violent, dangerous man, when under the influence of intoxicating liquors ; that his own character is that of a peaceable, quiet man; and that the conduct of the deceased, illustrated by his character, was such as to impress the mind of the defendant with a reasonable belief that he was in imminent peril; and in support of this position, he relies upon the evidence he has introduced of character, and on his own statements made soon after the killing had taken place. But the State says, that the character of the deceased was not dangerous when under the influence of liquor, except upon a contingency, as when imposed upon; that if he wore weapons, he wore them openly; that he was a brave man, and would not take the advantage of any one. The evidence as to character, it is unnecessary to say, is conflicting; but the jury must weigh it, and, by a careful discrimination, arrive at a just determination of what was the true character of the deceased. In the eye of the law, it is as great a crime to kill, unlawfully, and with malice aforethought, the vilest and most abject of the human race, as its greatest benefactor. No matter how bad, how dangerous, a man may be, he is still under the protection of the law ; and whoever kills such a person, can never justify the killing, unless it is shown that, taking into consideration his acts at the time of

the killing, as illustrated by his character, the slayer acted in self-defense. The defendant insists, that his acts and statements after the homicide show that he is guilty of no offense; but the State insists, that the statements made by the defendant are untrue—that they are contradicted by other and reliable testimony : that the defendant himself had proposed, and deliberately, willfully, and with premeditation, determined to kill Hagan, and had dared him across the railroad for the purpose of accomplishing his purpose. Which is the true theory of the case, the jury must determine from all the facts. They must take the statements of the defendant, and ascertain whether they are in themselves reasonable; whether they are contradicted by the testimony of other witnesses, and the interest of the defendant in the result of this prosecution; *and if they should find that these statements were not true—that the killing did not take place as narrated by the defendant—that fact, if the jury should find it to be a fact, would be evidence of guilt on the part of the defendant.* The jury must give his statements a fair and unprejudiced consideration, and must also carefully weigh the testimony of the other witnesses : they cannot capriciously reject the testimony of a single witness, but may look to the relationship they bear to the defendant, or to the deceased, and to their demeanor on the stand, and then reconcile all, if possible; and if they cannot, then they may reject that which they believe to be false, and give credit to what they believe to be true.

"If the jury should find, beyond all reasonable doubt, under the law as stated to them, that the defendant killed Charles Hagan with malice aforethought, and that the killing occurred in this county, before the finding of the indictment, it would be their duty to find him guilty of murder in the first degree, and sentence him to suffer death, or imprisonment in the penitentiary for life. If they should believe there was not that degree of willful, deliberate, and malicious killing which constitutes murder in the first degree, they will then inquire whether he is guilty of murder in the second degree. If he formed the design to kill the deceased, and with malice aforethought executed that design, he would be guilty of murder in the second degree, if the circumstances were such as not to constitute murder in the first degree. Manslaughter is the voluntary killing of a human being, without malice. The essential difference between murder and manslaughter is, that in murder there must exist in the mind of the slayer malice aforethought. No amount of provocation will justify the taking of human life; nor will mere words, or threats, unless the party making them is

attempting to execute them, reduce the killing from murder to manslaughter. But, *if the jury should conclude that the defendant killed Charles Hagan unlawfully, but had no malice against him at the time, they would be authorized in finding him guilty of manslaughter in the first degree.* They *will remember, though, that no matter how great the provocation given on the part of Hagan, if the defendant had time to reflect, and was not actuated by sudden passion when he killed Hagan, he would be guilty of murder, and the previous provocation, taken in connection with the killing, would be evidence of malice.*"

To those portions of the charge contained in the above extract which are italicized, and also to the entire charge, separate exceptions were reserved by the defendant. None of the evidence is set out in the bill of exceptions, except as above stated.

SNEDECOR & COCKRELL, for the prisoner.

JOHN W. A. SANFORD, Attorney-General, for the State.

BRICKELL, C. J.—1. The oath administered to the jury was not, in substance, the oath prescribed by the statute; and its administration is an error fatal to the judgment of conviction, under the authority of *Lewis v. State,* 51 Ala. 1; *Perkins v. State,* at the present term.

2. The motion to quash the *venire* rests on the sole ground, that several of the persons summoned as special jurors were incompetent, because of the relation they sustained to the case. Some of them were witnesses on behalf of the State, and others were of the petit jury on a mistrial of the cause at a former term. There can be no doubt, these persons were not good and lawful jurors, and were subject to challenge for cause. The sheriff, in summoning them, having knowledge of the disqualification, as the bill of exceptions indicates, was grossly derelict in duty, and the Circuit Court should not have permitted the dereliction to pass unnoticed. The right of the State, and the right of the accused, is the summoning of persons free from disqualification as jurors, from whom a jury may be selected; and the sheriff should not be suffered, from mere caprice, or negligence, to narrow or diminish the right. The court, at the instance of the State, or of the accused, would have excluded these persons from the *venire,* and caused others, free from exception, to be summoned in their place. But we cannot regard the summoning of them as cause for quashing the *venire,* which, so far as we are informed, contained a sufficient number of good and lawful men without them, from

whom a fair and impartial jury could be selected.—*Hall v. State*, 40 Ala. 698.

3. The fact of anticipated litigation between the deceased and the accused, or of litigation in which the accused felt an interest, connected with his declaration that he would kill any one who would sue him under like circumstances, was admissible, as bearing on the question of the relation of the parties and the state of the feelings of the accused towards the deceased. The merits of the litigation was not material. The right may have been against the deceased, but this would not change the fact, that the relation of the parties was hostile. Any evidence touching the merits would have multiplied indefinitely the issues before the jury, and would have served no other purpose than to distract and divert their attention from the real issues they were to try. The Circuit Court did not, therefore, err in excluding the deed from Broome to Swann.

4. We have carefully examined the charge of the court; and it seems to us free from error. It is in harmony with our several decisions.—*Murphy v. State*, 37 Ala. 142; *Eiland v. State*, 52 Ala. 322; *Hadley et al. v. State*, 55 Ala. 31.

For the error pointed out, the judgment must be reversed, and the cause remanded. The prisoner must remain in custody, until discharged by due course of law.