# THE STATE OF IOWA:

DES MOINES, DECEMBER TERM, A. D. 1874.

IN THE THIRTIETH YEAR OF THE STATE.

---

PRESENT:

HON. WILLIAM E. MILLER, CHIEF JUSTICE.
" CHESTER C. COLE, ⎫
" JAMES G. DAY. ⎬ JUDGES.
" JOSEPH M. BECK, ⎭

---

## THE STATE v. ABARR.

1. **Criminal law**: MANSLAUGHTER: EVIDENCE. Statement of the facts in evidence, which were held sufficient to sustain a verdict of guilty under an indictment for manslaughter.

2. ———: MANSLAUGHTER DEFINED. The following instruction gave the law correctly and was not erroneous for misdirection: "The crime charged in this indictment is that of manslaughter, and this is defined to be the unlawful and felonious killing of another, without any malice express or implied, and is divided into two kinds:

   *First.* Where a man doing an unlawful act, not amounting to a felony, by accident kills another, and this is called involuntary manslaughter.

185 ·

*Second.* Where a man kills another without malice, either express or implied, either unlawfully upon sudden quarrel, or unintentionally while the slayer is in the unlawful commission of some act not amounting to a felony.

The questions which you have to deal with in this case have reference to the second kind of manslaughter, just defined in your hearing."

3. ———: SELF DEFENSE. Where the court prefaced an instruction with this language: "Defendant claims by his counsel in argument before you, that the killing, if any, was done in self defense and hence justifiable. I therefore call your attention to the law of self defense:" the jury would as clearly understand that the defendant relied upon the claim of self defense, as if the court had stated that defendant had pleaded self defense in justification of the killing.

4. ———: ———: INSTRUCTION. In the following instruction: "To justify a killing in a personal conflict the defendant must, as a general rule, have retreated as far as he could before he resorts to killing, as to a wall or ditch. Sometimes cases occur where such killing is justifiable without such retreat, but they are rare," * * * : the words, "but they are rare," did not vitiate the instruction because they stated a matter of fact.

5. ———: ———: JURY. While one who is attacked without fault upon his own part, under circumstances which might reasonably beget the fear of loss of life or great bodily harm, may kill his assailant, although it may afterwards appear that his apprehensions were groundless, still the jury must determine whether the slayer had reason to apprehend loss of life or great bodily harm.

6. **Evidence:** GENERAL CHARACTER: PARTICULAR ACTS. Without deciding with respect to the admissibility of evidence relating to the general character of the deceased in a trial for manslaughter, it was held to be no error to refuse testimony as to particular acts.

*Appeal from Ringgold District Court.*

TUESDAY, SEPTEMBER 22.

THE defendant was indicted for the crime of manslaughter, and was tried, found guilty and sentenced to the penitentiary for three years, and to pay a fine of three hundred dollars. The defendant appeals.

*L. S. McCoun & V. G. Holliday,* for appellant.

*M. E. Cutts, Attorney-General,* for the State.

COLE, J.—I. There is no material conflict in the evidence. The deceased, Jonathan P. Babbitt, the defendant, and six or eight other men, were working together on the highway in their road district in Ringgold county, on the third day of June, 1870. All were then friends and ever had been, so far as the evidence discloses. The deceased and defendant were digging in a ditch and were from twenty to thirty feet apart, the former having an ordinary or short handled shovel, and the latter a long handled one. The deceased proposed to trade shovels, remarking that he could do better with a long handled shovel. The defendant said he could not dig with a short handle better than Babbitt, but threw his shovel over to him and then went on with his work. Babbitt, with an oath called the defendant lazy, and he replied, also with an oath, " May be you don't like it; " Babbitt said he didn't and he could whip the defendant; and to this the defendant answered, " Pitch in, go your length." Expressions like these, mingled with profanity, were repeated several times, when Babbitt started towards the defendant who was standing with his back that way, and while Babbitt was approaching him the defendant took his knife from his pocket and opened it, almost unobserved. When Babbitt was about half way, he dropped his shovel, and as he approached the defendant, who had in the mean time turned his face that way, Babbitt seized him or attempted to seize him by the neck and to strike him, and just as this was being done, the defendant, with his open knife, stabbed Babbitt several times in the region of the heart. Babbitt exclaimed, " My God, he has killed me, I'm a dead man," and died in a very short time. There is some evidence tending to show that the deceased was a man of more than ordinary size, and somewhat quarrelsome.

Upon this state of case, we are asked to say that the verdict of guilty of manslaughter cannot be sustained. We cannot do so. The verdict, under the indictment, is right.

II. The court instructed the jury, *inter alia*, that " the crime charged in this indictment is that of manslaughter, and this is defined to be the unlawful and felonious killing of another, without any malice, express or

*(marginal notes: 1. CRIMINAL LAW: manslaughter: evidence. 2. ——: manslaughter defined.)*

implied, and is divided into two kinds:  *First*. Where a man
doing an unlawful act, not amounting to a felony, by accident
kills another, and this is called involuntary manslaughter.
*Second*. Where a man kills another without malice, either
express or implied, either unlawfully upon sudden quarrel, or
unintentionally while the slayer is in the unlawful commission
of some act not amounting to a felony.  The questions which
you have to deal with in this case have reference to the second
kind of manslaughter, just defined in your hearing."

This instruction states the law so clearly that it was hardly
possible for the jury to misapprehend it, or to suppose that the
court intended to say that this case was embraced in the last
alternative of the second sub-division stated in the instruction.

The court, in stating the law relative to self defense, pre-
faced it with this language:—"Defendant claims by his coun-
sel in argument before you, that the killing, if

3 ——: self    any, was done in self defense, and hence justifia-
defense.

ble.  I therefore call your attention to the law of self defense."
From this, the jury would as clearly understand that the
claim of self defense was relied upon by the defendant, as if
the court had stated directly that the defendant pleaded that
the killing was done in self defense.  We cannot see that any
prejudice did, or could have resulted to defendant, from the
manner of stating the instruction above set out, or the intro-
duction to the instructions following.

III.  One of the instructions upon the law of self defense
was as follows:—"To justify a killing in a personal conflict, the

4. ——: ——:   defendant must, as a general rule, have retreated
instruction.   as far as he could before he resorts to killing, as
to a wall or ditch.  Sometimes cases occur where such killing
is justifiable without such retreat, but they are rare.  In such
cases the assault must have been so fierce as to make such
retreat dangerous to life, or like to produce great bodily harm.
*  *  *  * ''   The precise objection is, that the court should
not have inserted the words " but they are rare," and this,
because, that they are rare is a matter of fact.  But, to this it
may be answered, that the law takes notice of facts and is
grounded thereon, and in fully stating the law, it becomes nec-

essary often-times to state the facts connected with which it has arisen. The law is stated in the books as it was given in this case by the court. 1 Whart. Crim. Law, § 1021.

IV. The court also instructed the jury that "one without fault, attacked under such circumstances as to give reason to apprehend a loss of life or great bodily harm, and the danger being imminent and urgent, may kill his assailant, though it may afterwards turn out that the appearances were false. But the jury and not the defendant are to judge as to the grounds of apprehension. * * * * The question for your consideration is, whether this defendant, as an ordinarily prudent and cautious man, had reason to apprehend loss of life or great bodily harm." This is fully supported by *The State v. Neeley*, 20 Iowa, 108; *The State v. Thompson*, 9 Iowa, 188.

5. ——: ——; jury.

V. Upon the trial, the court permitted the defendant to examine witnesses as to the general character of the deceased, relative to fighting and quarreling, but refused testimony as to particular fights and quarrels. This refusal is urged as error. There was no claim that the defendant had any knowledge of such fights and quarrels prior to the homicide. Without holding that the evidence of general character was properly admitted, (see 1 Whart. Crim. Law, § 641; 3 Greenl. on Ev. § 27; *The State v. Field*, 14 Me. 244, and *Commonwealth v. Hilliar*, 2 Gray, 294,) we are quite clear there was no error in refusing the testimony as to particular acts. *Forshee v. Abrams et al.*, 2 Iowa, 571.

6. EVIDENCE: general character : particular acts.

AFFIRMED.