## PATTERSON v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Evidence of Conduct of Deceased previous to Murder.*—*Intoxication.*—On the separate trial of a defendant indicted jointly with others for murder, it appeared by the evidence, that, on the day of the killing, the defendant and the deceased had an altercation ; that the defendant and others, subsequently meeting the deceased, set upon him to beat him and to take from him a pistol which he refused to give up ; that the deceased vainly endeavored to get away ; and that the pistol, being wrenched from him, was discharged, whether accidentally or purposely being uncertain, but killing the deceased. There being other wounds upon the deceased not contributing to his death, the defendant, to show that the deceased had received these wounds prior to such assault, offered to prove that the deceased had been intoxicated, boisterous, violent and quarrelsome, during the day on which he was killed.

*Held*, that the evidence was too remote, and was incompetent.

SAME.—*Instruction.—Manslaughter.—Malice.—Purpose.*— It was proper to instruct the jury in such case, that, if the killing was done unintentionally during an affray, or intentionally in hot blood engendered by the combat, but without malice, the crime was no more than manslaughter. But it was erroneous to add, that " if the person who does the killing entertained malice towards his victim, and out of such malice slew him, his crime would be murder, notwithstanding his blood was heated by the combat."

SAME.—*Killing in Hot Blood.*—It was also erroneous to instruct the jury that if, in an unprovoked assault by the defendant upon the deceased, the latter was "intentionally and unlawfully " slain by the former, the slayer " is guilty of murder, notwithstanding his blood may have become so heated as to carry him beyond his original purpose."

From the Owen Circuit Court.

*W. R. Harrison* and *W. E. McCord,* for appellant.

*T. W. Woollen,* Attorney General, *S. O. Pickens,* Prosecuting Attorney, and *I. H. Fowler,* for the State.

BIDDLE, J.—The appellant was indicted, being impleaded with Charles Patterson, William Adams and John Bryant, for the murder in the first degree of Anthony White.

Adams was tried separately and found guilty of manslaughter. *Adams* v. *The State,* 65 Ind. 565.

The appellant also pleaded separately, was tried and convicted of murder in the second degree. He appeals to this court, and presents two questions for our consideration.

The evidence in the case tends to prove that the appellant and the deceased, previously to, but upon the same day of, the fatal conflict, had a difficulty, which led to a quarrel, about some drinks which the deceased had ordered for them, and did not pay for. Afterwards the parties came together, and the appellant and others set upon the deceased to beat and take from him a pistol which he had refused to give up. The deceased endeavored to escape from the fight, but could not get away. During the conflict the pistol was taken from the deceased and fired off, but whether by accident or with the purpose of killing the deceased does not clearly appear. The bul-

let entered the back part of the head of the deceased, ranged forward and downward, and lodged at the base of the brain. He died almost instantly of the wound. There were other slight wounds on the scalp of the deceased, and a bruise upon one of his shoulders, but they were unimportant in causing his death.

The above evidence is sufficient to show the applicability of the questions presented by the record.

At the trial, evidence was offered on behalf of the appellant to prove that the deceased, upon the day he was killed, became very much intoxicated, was riding around the country on horseback in that condition, endeavoring to pick a quarrel with whomsoever he met ; that while on foot he was taken by the arms by two persons and conducted along the road a distance of fifty yards, and induced to mount his horse ; that he rode several miles to a public meeting and picnic, where he dismounted and mingled with the crowd, around a band of music, and was there performing, leaping and attempting to dance ; that in the afternoon he was still greatly intoxicated. Which evidence was offered to the jury, to affect the question as to the manner in which said deceased received the wounds other than that supposed to be the pistol shot.

This evidence was rejected by the court; but the court offered to admit it, if the defendant would declare that he sought or expected to prove thereby, or claimed, that any of the injuries on the person of the deceased were occasioned thereby, or received therein, or might have been inflicted thereby, which offer the defendant refused, and excepted to the ruling of the court.

This evidence, so offered, was too remote to authorize any fair inference by the jury that the wounds mentioned were received as accidents of the drunken behavior of the deceased ; and, as the appellant had no more evidence to offer tending to show that the wounds were received in that manner, it was properly rejected. While we are clearly

of the opinion that the evidence was incompetent for the purpose offered, yet we express no opinion as to whether such evidence was competent for any other purpose or not, as no such question is presented by the record.

After the close of the evidence in the case, the court gave the following instruction to the jury :

" 18.   When two persons enter upon a combat by mutual agreement, neither intending to kill the other, and one of them unintentionally slays the other by the force he uses therein, or, out of the hot blood engendered by such combat, and without malice, intentionally slays the other by the force he uses therein, the grade of such homicide is but that of manslaughter.   But if the person who does the killing entertained malice towards his victim, and out of such malice slew him, his crime would be murder, notwithstanding his blood was heated by combat.

" Where one or more persons, not being moved by legal provocation so to do, assail another for the purpose of giving him a beating and wounding, and the person thus assaulted   does nothing except ward off the attack made, and refuses to enter into combat with his assailants, and in such attack is intentionally and unlawfully slain by his assailants, the one who thus slays him is guilty of murder, notwithstanding his blood may have become so heated as to carry him beyond his original purpose.

" And so, in this case, if you find that James Patterson and others made an unlawful assault upon Anthony White, the deceased, not in hot blood arising out of sufficient provocation, with the intention of beating and wounding said White but not of killing him, and find that said White refused to enter into combat with them, and did nothing but ward off their assault, and find that during said attack the defendant James Patterson's blood became heated, and that, impelled by such hot blood, he drew a weapon, or seized one, and intentionally shot and killed said White,

said defendant would be guilty of murder in the second degree."

This instruction, although given as one, contains three distinct propositions, which we have divided into paragraphs for convenience in its examination. The question presented for our consideration is, whether the facts supposed as the basis of the instruction constitute murder, either in the first or second degree.

Murder in the first degree is defined by our statute as follows:

"Sec. 2. If any person of sound mind shall purposely and with premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill any human being, such person shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death." 2 R. S. 1876, p. 423.

Murder in the second degree is defined as follows:

"Sec. 7. If any person shall purposely and maliciously, but without premeditation, kill any human being, every such person shall be deemed guilty of murder in the second degree, and on conviction thereof, shall be imprisoned in the state-prison during life." 2 R. S. 1876, p. 426.

It is plain, from the above definitions, that murder in the first degree can not be committed in a case like the present, arising out of combat, unless the killing was done "purposely and with premeditated malice;" and that murder in the second degree can not be committed in any case unless the killing was done "purposely and maliciously."

The first proposition of the charge instructs the jury, that if the killing was intentionally done, in hot blood engendered by a combat, without malice, it is no more than manslaughter. This is correct. But, in the succeeding sentence, the jury are instructed, that, "if the person

who does the killing entertained malice towards his victim, and out of such malice slew him, his crime would be murder, notwithstanding his blood was heated by combat." This sentence, as it leaves out the element of premeditation, could have been but murder in the second degree at most; and, if so, the jury should have been instructed accordingly, and not as to murder generally, which they might understand to mean murder in the first degree.

The second paragraph of the instruction tells the jury, that, if the slaying in combat was " intentionally and unlawfully" done, the slayer " is guilty of murder, notwithstanding his blood may have become so heated as to carry him beyond his original purpose." This instruction, as it leaves out the elements of premeditation and malice in the offence, can not amount to murder either in the first or second degree. The facts supposed amount to no more than manslaughter.

In the third paragraph of the instruction, essentially the same facts are supposed as those stated in the second, by way of hypothesis; indeed, the instruction is essentially the same as the second, except that the names are mentioned, the killing supposed to be done by a weapon, and the murder restricted to the second degree.

For these reasons we think the instruction throughout is erroneous. No killing in a combat which engenders hot blood, however unlawful, can be murder even in the second degree, unless the elements of purpose and malice concur in the act. Such a killing may amount to manslaughter, but it can not be murder in either degree. 1 Bishop Crim. Law, secs. 427, 428, 429; 1 Archb. Crim. Pr. & Pl. 740; *Ex Parte Moore*, 30 Ind. 197; *Murphy* v. *The State*, 31 Ind. 511; *Miller* v. *The State*, 37 Ind. 432; *Allison* v. *The State*, 42 Ind. 354; *Field* v. *The State*, 50 Ind. 15; *Wall* v. *The State*, 51 Ind. 453; *Bechtelheimer* v. *The State*, 54 Ind. 128.

The judgment is reversed, and the cause remanded, for further proceedings. The clerk will make the proper order for the return of the prisoner.