State vs. Jackson.

No. 1017.

THE STATE OF LOUISIANA VS. HENRY JACKSON.

Evidence of the dangerous character of the deceased, in a charge of murder, is not admissible in justification of the accused, on account of threats and hostile demonstrations made by the deceased prior to, and disconnected from, the time of the killing, unless followed by some assault or hostile demonstration on the immediate occasion of the killing, tending to produce upon the mind of the accused the impression that he was in instant danger, which could only be averted by the killing of his adversary.

! 33 1087
  46  804
  33 1087
  47  423
  33 1087
 104  595
  33 1087
 124 1064

APPEAL from the Third District Court, parish of Union. *Graham, J.*

*Allen Barksdale,* District Attorney, for the State, Appellee.

*G. H. Ellis* and *G. A. Kilgour* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. The defendant appeals from a conviction and sentence for manslaughter. The error complained of, is presented by two bills of exception, one to the refusal of the judge to admit evidence offered to prove the dangerous character of the deceased, and the other to the refusal by the judge of a new trial on the same ground.

In the arguments, oral and written, of counsel, large latitude was taken in the statement of facts bearing on the question.

Of course, we are strictly confined to a consideration of the facts as stated in the bills of exception signed by the judge. We epitomize these as follows: Defendant and deceased had a quarrel in the evening. There was no physical collision, but deceased was in a violent passion, and entered his house and got his gun, threatening to shoot the defendant, but was disarmed and prevented from doing so by his wife and a neighbor. To a proposition of defendant to settle the matter, deceased replied that it could only be settled with shot-guns, and that he would take defendant's life before daylight. Defendant thereupon left, went to his own house, some one hundred yards distant, and thence went to the house of his employer about a quarter of a mile off. While there, he received a message that deceased had been to his house with his gun and inquired for him, and was waiting on defendant's road, ready for his return; and a witness also testified that he had seen the deceased sitting, with his gun, on that road. Defendant then borrowed a shot-gun and started off, not exactly in the direction of his own house, came to where the deceased was, near his (deceased's) house, and shot him down. The evidence showed that, before the time of the killing, deceased had returned to his own house, had put his gun away, and was out near his house, when the defendant came up and shot him. At the time of the killing, deceased was not making any attack upon defend-

ant, and was not doing any act indicating his intention to carry into effect his threats to take defendant's life.

Under this state of facts, the judge rejected the evidence offered by defendant to prove the dangerous and desperate character of the deceased, on the ground that "the evidence showed that there was no actual attempt or act, on the part of the deceased, at the time of the killing, to carry into effect the threats he had made against the defendant, or to indicate, at the time, an intention to carry into execution said threats." For the same reason, the new trial was refused.

It is manifest that the character of deceased, however desperate, could not afford the slightest justification for killing him under the circumstances above disclosed; and as evidence of such character is only received in exceptional cases, as an element of justification, the evidence was properly rejected.

We know of no case in which it has ever been held that threats and hostile demonstrations prior to and disconnected from, the time of the killing, could lay the foundation for the introduction of such evidence, unless followed by some assault or hostile demonstration on the immediate occasion of the killing, tending to produce, upon the mind of the accused, the impression that he was in instant danger which could only be averted by killing his adversary.

Whatever reason defendant had to believe that the deceased was his implacable enemy and intended to kill him, the law did not justify him in anticipating the attack, in taking the law into his own hands, and in shooting deceased down on sight, without waiting for any demonstration of immediate hostile intention. In such case, if defendant would avert a danger to his life, threatened, but not instantly impending, he had the opportunity, and it was his duty, to invoke the interposition of the law, which affords appropriate redress under such circumstances. If he prefer to avoid the aid of the law, and to rely upon his individual right to repel attack, he must wait until the attack is made or attempted, before he can exercise such a right. Wharton, C. L., § 487. " The belief that a person designs to kill me," says Chief Justice Ruffin, " will not prevent my killing him from being murder, unless he is making some attempt to execute his design, or at least is in apparent situation so to do, and thereby induces me to think that he intends to do it immediately"—meaning, by *situation*, that, "by some act or demonstration he indicates, at the time of killing, a present intention to carry out such purpose." State vs. Scott, 4 Jud. Law, 407,; Harrison vs. State, 24 Ala. 67; Wharton's C. L. 493.

Manifestly, the dangerous character of the deceased could, in no manner, alter or affect the application of these principles, and evidence·

thereof was irrelevant and inadmissible, under the circumstances of this case, for any purpose.

There is absolutely no conflict of authority as to the correctness of the judge's ruling, and it is confirmed even by the cases quoted by defendant's counsel. 5 An. 589; 9 An. 46; 10 An. 453; 12 An. 679; 21 An. 473; 29 An. 593; 30 An. 341, 679; 31 An. 302, 379; 32 An. 1084, 1098, 1177.

Judgment affirmed.