## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

### HARRISON V. THE COMMONWEALTH.

#### September 18, 1884.

1. HOMICIDE—*Murder—Definition.*—Murder is where a man of sound sense unlawfully killeth another of malice aforethought, either express or im-plied.   If express, the facts remain with the jury.   If it is to arise from implication, it is a matter of law, the entire consideration whereof re-sides with the court.

2. IDEM—*Intent.*—It must be presumed that a man intends what is the nat-ural and necessary consequence of his own act.

3. IDEM—*Dangerous Character of Deceased—When Admissible Evidence.*— Where a case of self defence has been *prima facie* made out, such evi dence is admissible.

4. IDEM—*Idem—When Inadmissible Evidence.*—It is no palliation that prisoner believed the man he attacks and kills to be a dangerous person, and in such case, such evidence is inadmissible.

5. IDEM—*Idem—General Reputation.*—Where such evidence is admissible. the proof must be of the deceased's general reputation as a dangerous person, and not of the opinion of a particular individual.

6. IDEM.—*Case at bar* is one where the facts show a homicide through malice aforethought.

Argued at Wytheville but decided at Staunton.   Error to judgment of circuit court of Wythe county, refusing a writ of error to judgment of county court of said county, rendered Jan-uary 21st, 1884, by which judgment the plaintiff in error was, in accordance with the verdict of the jury, at his trial on an in-dictment for the murder of Craig Brown, sentenced to death by hanging.

The facts of the case as certified are as follows:

The prisoner and the deceased were in the employment of Van Lew's iron furnace, in Wythe county, the prisoner as a teamster and the deceased as a gutterer; but they lived in different houses, which, however, were in sight one from the other. On the night of November 22d, about 8 o'clock at night, the prisoner went to the house where the deceased lived; as he walked in deceased took hold of the prisoner as if to engage in a friendly tussle. Prisoner did not notice him at first, but as the deceased loosened his hold of the prisoner and started to walk into a back room, the prisoner set down a lantern which he held in his hand, and put his hands on the shoulders of the deceased from behind and pushed him into the rear room, where they scuffled a few minutes, which resulted in both parties falling on a bed in that room. The prisoner fell on top of deceased, and choked him in that position. Deceased, while they were on the bed, cut the prisoner with an instrument supposed to be a jack-knife. They were then separated. Although twice cut with the knife, the prisoner was not much hurt, and did not stop work, and no surgeon saw the wounds until after the homicide. On the 23d the prisoner tried to get an opportunity to renew the difficulty, and later in the day exhibited a pistol, which he said he had for the deceased. On the morning of the homicide, which was the 25th of November, the prisoner came out of his quarters, pistol in hand, and seeing deceased chopping wood close by, went up to him, saying to a companion, "yonder is that fellow now; I will go and settle with him." Then the prisoner came up within eight or ten feet of the deceased, who was still chopping wood, and presented his pistol at him. The deceased called for a man in the house, named McClellan, to come to the door, that the prisoner was there bothering him again, and that he was not bothering the prisoner. The prisoner then said: "What did you cut me with that knife for?" Deceased replied: "Shoot me; if you don't, I will kill you." The prisoner replied: "No; I don't want to shoot you, but if you will put down your axe and come out here, I will fight you a fair fight." Deceased said

angrily, with an oath: "No; I am done with the fuss, but when you shoot, make a sure shoot, or I will kill you certain." The prisoner, during this colloquy, lowered his pistol with the muzzle downward, and taking hold of the hammer or cylinder with one hand, seemed to be working or fingering the hammer or barrels. He held the pistol in this position for several minutes, and upon the deceased speaking the words: "When you shoot, make a sure shot, or I will kill you certain," the prisoner stepped back a step or two, raised and presented the pistol at the deceased and fired two shots in quick succession, both of which took effect in the body of the deceased, from the effects of which he quickly died.

The deceased had made no motion or threat of striking with the axe which he held in his hand, and was not near enough to have struck the prisoner with the axe, in the place he was standing, without throwing it, which he showed no sign of doing.

It was further proved, that on the day after the difficulty, when the cutting was done, the deceased had been urged to leave the place until the prisoner got quiet, when he said he would not do it; that he had tried to cut the prisoner's guts out once, and that he was going to lay around until he got hold of him, and then he was going to finish him, then that would be time enough to get out of the way.

And on the next day, the 24th, the day before the homicide, the deceased had said to another person that he had tried to kill the prisoner on the 22d, and intended to do so yet. But there was no evidence that these threats were communicated to the prisoner before the homicide.

It was further proved, that the deceased was a fussy, quarrelsome and dangerous man; that this was his general character in that vicinity and where he was known. And that the prisoner was a peaceable, inoffensive man, industrious and attentive to his business; that the deceased and the prisoner were well matched in size, &c.; and that the prisoner made no attempt to escape after the killing.

The prisoner, being convicted of murder in the first degree, moved the court to set aside the verdict of the jury as being contrary to the law and the evidence, which motion the court overruled and sentenced the prisoner in accordance with the verdict. The prisoner excepted to the said ruling of the court so refusing to set aside the said verdict of the jury and grant him a new trial, and has assigned the same. as error here.

*W. S. Poague*, for plaintiff in error.

*Attorney-General F. S. Blair*, for the commonwealth.

LACY, J., after stating the case as aforesaid, delivered the opinion of the court:

The statute provides that murder by poison, lying in wait, imprisonment, starving, *or any wilful, deliberate and premeditated killing*, is murder of the first degree; and that murder of the first degree shall be punished with death. Murder has been defined to be the wilful killing of any subject, whatsoever, through malice aforethought. Lord Coke says: "Murder is when a man of sound memory and of the age of discretion, unlawfully killeth, within any county of the realm, any reasonable creature, *in rerum natura*, under the king's place, with malice aforethought either expressed by the party or implied by law, so as the party wounded or hurt die of the wound or hurt within a year and a day after the same." Lord Mansfield defined it thus: "Murder is when a man of sound sense unlawfully killeth another of malice aforethought, either express or implied. If the malice be express, the facts remain with the jury. If the malice is to arise from implication, it is a matter of law, the entire consideration of which resides with the court."

If a man is to be taken to intend what he does, or that which is the necessary and natural consequence of his own act, which cannot be denied, then the plaintiff in error, when he pointed

a loaded pistol at the deceased, some eight or ten feet distant, which he had carefully inspected and manipulated a few seconds before, and fired the same with deliberate aim, twice, thus shooting and killing the deceased, he only carried out a formed purpose with deliberate execution. And if malice may be inferred from the deliberate use of a deadly weapon in the absence of proof to the contrary, that then in this case the malicious intent seems to be established.

The plaintiff in error, as has been set forth, had a difficulty with the deceased on the 22d of November, in which he was slightly injured. On the 25th of the same month, after seeking him on the 23d, and threatening to kill him on sight, the plaintiff in error, being himself in nowise assaulted or attacked, approaches the deceased with a loaded pistol and challenges the deceased to a fair fight without weapons, which being declined upon the ground that the deceased was done with the fuss, he deliberately shoots the deceased and kills him. The deceased was practically unarmed, for while he held in his hand an axe, which he was using to chop wood, he made no hostile use of it, and was not close enough to strike the prisoner with it, unless he had thrown it. It seems difficult to imagine a more deliberate killing.

But the plaintiff in error seeks to justify his act upon the plea of self-defence, alleging that the deceased was a person of a fussy and dangerous character, and adduces evidence to that effect. Another error assigned by him, is that a witness was not allowed to answer the question propounded by the prisoner, "Did you consider the deceased a person of dangerous character?"

It cannot be contended that the fact that the deceased was a dangerous character, and fussy and quarrelsome, would justify any person to kill him who should feel so inclined, without provocation or any cause of offence whatever. Evidence of the bad and dangerous character of the deceased has been held admissible, and properly so under some circumstances in many

states of this country. If a case of self-defence is *prima facie* made out by the defendant on a trial for homicide, he has been held entitled to show that the deceased was a man of superior strength and of brutal and ferocious character. It. has been so held in many of the states.

· *Lewellen* v. *The State,* 6 Tex. Ap. 475 ; *Hudson* v. *The State,* 6 Tex. Ap. 565 ; *People* v. *Murray,* 10 Cal. 309 ; *State* v. *Jackson,* 33 La. Ann. 1087 ; *Shivey* v. *State,* 58 Miss. 868 ; *Rippey* v. *State,* 2 Head. 217 ; *Payne* v. *Commonwealth,* 1 Meto. Ky. 370 ; *Roberts* v. *State,* 68 Ala. 158 ; *Haynes* v. *The State,* 17 Ga. 465 ; *State* v. *Smith,* 12 Rich. 430 ; *State* v. *Sackett,* 1 Hawks, 210; *State* v. *Keene,* 50 Mo. 357 ; *Davidson* v. *People,* 4 Col. 145 ; *State* v. *Scott,* 24 Kan. 68; *State* v. *Dumphey,* 4 Minn. 438 ; *Com.* v. *Barnacle,* 134 Mass. 216 ; *State* v. *Nett,* 50 Wis. 524 ; *State* v. *Collins,* 32 Iowa, 36 ; *Brownell* v. *The People,* 38 Mich. 732 ; *State* v. *Hawley,* 4 Harr. 562; *Patterson* v. *State,* 66 Ind. 185 ; *Com.* v. *Zeibert,* Wharton on Hom. 506.

While such evidence has been admitted in many cases where the prisoner had been assaulted, and when the defendant appeared to have been acting in self-defence in striking the fatal blow, yet it would be no palliation of an assault by the prisoner, that the prisoner believed that the person *attacked and killed by him* was a dangerous person. And where no case of self-defence has been made out, it has been decided, in numerous cases, that such evidence was inadmissible. And in such a case, when the prisoner himself made an attack and killed his antagonist, without other danger to himself than such as he had himself deliberately sought by his own violent and unlawful conduct, such evidence is properly excluded. See *State* v. *Field,* 14 Me. 244 ; *People* v. *Lamb,* 2 Keyes, 364 ; *Eggler* v. *People,* 56 N. Y. 642 ; *State* v. *Hogue,* 6 Jones, N. C. (L.), 381 ; *State* v. *Dumphey,* 4 Min. *supra* ; *People* v. *Murray,* 10 Cal. *supra.*

In this case evidence of the dangerous character of the deceased was admitted by the court, and this was not an error of

which the plaintiff in error can complain.. Such evidence could only be admitted of the general reputation of the deceased in a proper case. That being matter of public notoriety, the prisoner is presumed to have had knowledge of it and to have been put in greater fear of his life being taken when *assaulted* by such a person, or of suffering serious bodily hurt. But it could not, upon any such ground, have been supposed that the opinion of a particular witness as to the dangerous character of the deceased, could have been known to the defendant and have influenced his action. And the court did not err in excluding the question set forth in the first assignment of error here, and the said exception must be overruled.

Upon the whole case we are of opinion that there is no error in the judgment complained of, and the same must be affirmed.

JUDGMENT AFFIRMED.